IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CSC UPSHOT VENTURES I, L.P., | § | |
| | § | |
| Respondent Below, | § | |
| Appellant, | § | No. 475, 2023 |
| | § | |
| v. | § | Court Below: Court of Chancery |
| | § | of the State of Delaware |
| PURVI GANDHI-KAPOOR, | § | |
| | § | C.A. No. 2022-0881 |
| Petitioner Below, | § | |
| Appellees. | § | |

Submitted: July 10, 2024
Decided: July 30, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LeGROW**, and **GRIFFITHS**, Justices constituting the Court *en banc*.

## **ORDER**

The Court has considered the record below, the Court of Chancery's Opinion Denying Rule 12(b)(1) Motion to Dismiss in Favor of Arbitration and Rule 60 Motion to Vacate Orders,[1] the parties' briefs, and the argument of counsel, and it appears to the Court that:

(1)  In September 2022, Purvi Gandhi-Kapoor ("Gandhi") brought a summary advancement action in the Court of Chancery after Hone Capital LLC and related entities ("Hone") sued Gandhi in California.

---

[1] *Gandhi-Kapoor v. Hone Capital LLC*, 307 A.3d 328 (Del. Ch. 2023).

Gandhi was a member and CFO of Hone, and had the title of Partner. Through her role at Hone, Gandhi helped to manage CSC Upshot Ventures I, L.P. ("Upshot"). Hone and Upshot are indirect subsidiaries of China Science & Merchants Investment Management Group Co. Ltd. ("CSC"), a private equity fund.

(2)     In 2020, Hone sued Gandhi in California state court, alleging that "Gandhi committed wrongdoing against Hone and its parent entities, including breaches of fiduciary duty and fraud."[2]

(3)     Gandhi responded by filing a separate lawsuit—also in California state court—against Hone, Upshot, and CSC, among other parties. Hone asserted counterclaims that were closely aligned with its claims in its suit against Gandhi. The California court consolidated the two cases a year later.

(4)     In her petition for advancement, Gandhi alleged that she had incurred, and expected in the future to incur, substantial fees and expenses in defending the claims asserted against her in the California consolidated action. She asserted further that Hone and Upshot were required under their organizational agreements—Hone's operating agreement and Upshot's partnership agreement—to advance her past and future fees and expenses. The Upshot partnership agreement has an arbitration provision, but the Hone operating agreement does not.

---

[2] App. to Opening Br. at A332.

(5)    Hone and Upshot—both represented by the same counsel—stipulated to a scheduling order and answered Gandhi's petition.  They also stipulated to an order that called for Gandhi to file "a dispositive motion" and agreed to an expedited briefing schedule.

(6)    Gandhi filed her motion for summary judgment and opening brief and, now represented by new counsel, Hone and Upshot answered.  After Gandhi submitted her reply brief, the Court of Chancery entered its order granting Gandhi's motion.  From the filing of Gandhi's petition to the court's order granting summary judgment, six months had elapsed.  During that time, Upshot did not invoke the arbitration clause in its partnership agreement.

(7)    Despite the Court of Chancery's order that Hone and Upshot were required to pay Gandhi's outstanding fees and expenses, neither complied, prompting Gandhi to move for sanctions.  Still, Upshot did not seek arbitration; instead, eight months after Gandhi filed her petition, in its opposition to Gandhi's sanctions motion, Upshot acknowledged Gandhi's "right[ ] to pursue judgment collection efforts based on any Order of [the Court of Chancery]."[3]  The court found Hone and Upshot in contempt and levied a coercive daily fine—$1,000 per day—

---

[3] App. to Answering Br. at B108.

until the contempt was cured and allowed that "Gandhi may apply for a receiver if the contempt persists."[4]

(8) Three weeks later, Hone and Upshot remained in contempt, forcing Gandhi to file a "renewed motion for further sanctions,"[5] including the appointment of a limited-purpose receiver to obtain compliance with the court's order.

(9) In response to Gandhi's renewed motion, the court ordered Hone and Upshot to show cause why a receiver should not be appointed. They both filed responses in opposition to the renewed motion, but Upshot—now through its third set of counsel—also moved to be dismissed from the court's summary-judgment order and the entire case. Upshot's motion, filed 11 months after Gandhi filed her advancement petition, claimed that the Court of Chancery "does not have subject-matter jurisdiction over Gandhi's claim against the Fund because the Fund's agreement contains an exclusive arbitration provision."[6] Remarkably, the Fund's motion appears to take the Court of Chancery to task for not referring to or analyzing the arbitration provision in its summary-judgment order, despite the Fund's seemingly conscious decision not to invoke the provision.

(10) The Court denied Upshot's motion to dismiss. In short, the court concluded that, by failing to raise the arbitration provision until late in the

---

[4] *Id*. at B117.
[5] *Id*. at B118.
[6] App. to Opening Br. at A419.

litigation—indeed until it had lost on the merits and was held in contempt—the Fund had waived its right to arbitrate.[7]  Upshot appealed.

(11)  Upshot acknowledges that "a party to an arbitration agreement may waive its contractual right to arbitrate[] [and that] such a contractual waiver would accordingly cause the party to lose its jurisdictional defense."[8]  Consequently, we need not address the parties' dispute over, and the Court of Chancery's analysis of, whether, as Upshot puts it, "[t]he Delaware courts . . . lack subject-matter jurisdiction over arbitrable disputes."[9]

(12)  We discern no error in the court's determination that Upshot waived its right to arbitrate Gandhi's advancement claims.  "It is well settled in Delaware that contractual requirements or conditions may be waived."[10]  A contractual arbitration right can be waived by litigating without preserving the right.[11]

---

[7] *Gandhi-Kapoor*, 307 A.3d at 360.

[8] Opening Br. at 27.

[9] *Id*. at 19; *see also Gandhi-Kapoor*, 307 A.2d at 337–45.

[10] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

[11] Thomas H. Oehmke with Joan M. Brovins, *3 Commercial Arbitration* § 50:1 (2023);  2 Bradley W. Voss, *Voss on Delaware Contract Law*, § 8.82[6][m][i] at 8-378–80 (2024) (citing *Parfi Holding AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1260 n.39 (Del. Ch. 2004) ("It is, of course, the case that a party may waive its right to arbitrate by . . . actively participating in litigation as to an arbitrable claim . . . ."); *see also W. R. Ferguson, Inc. v. William A. Berbusse, Jr., Inc.*, 216 A.2d 876, 878 (Del. Super. 1966) (holding with "no hesitation" that the defendant "waived the contract provision relating to arbitration" by not raising arbitration for nine and a half months after filing an answer); *Dorsey v. Nationwide Gen. Ins. Co.*, 1989 WL 102493, at *2 (Del. Ch. Sept. 8, 1989) (concluding that "allow[ing] the litigation to proceed for two years" before attempting to invoke an arbitration clause amounted to a waiver); *Menn v. Conmed Corp.*, 2019 WL 925848, at *2 (Del. Ch. Feb. 25, 2019) (failure to raise "'the legal arbiter' defense until twenty-one months after litigation commenced" resulted in a finding of waiver); *Perik v. Student Res. Ctr., LLC*, 2024 WL 181848, at *2 (Del. Ch. Jan. 17, 2024) (defendants waived the right invoke

(13) This Court has identified three elements that must be satisfied to support a finding of waiver: (1) there must be a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition.[12] The first of these elements is not in issue. And Upshot has not offered a persuasive argument, nor does the record support a conclusion, that it was unaware of the arbitration provision in its partnership agreement and did not intend to waive it.

(14) Upshot's half-hearted suggestion that it was unaware of the arbitration provision until its third set of counsel entered an appearance after it lost on the merits and was sanctioned for noncompliance with the court's order rings hollow. Indeed, three days after Gandhi filed her petition in the Court of Chancery, Upshot's California counsel emailed Gandhi's Delaware counsel, noting that "the indemnification matter"—an apparent reference to this case—"requires arbitration."[13] Moreover, Upshot's protest that its 11-month delay is not so lengthy as to support a finding of intentional waiver is equally unavailing given the summary nature of advancement proceedings and the intervening merits ruling adverse to

---

an arbitration provision through their litigation conduct over three months—including filing an answer, stipulating to a case schedule, briefing the plaintiffs' motion for summary judgment, filing a motion for leave to file a sur-reply, and filing that sur-reply—because defendants' actions were "inconsistent with their right to arbitrate a claim subject to a summary proceeding.").

[12] *AeroGlobal*, 871 A.2d at 444 & n.64 (citing *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972)).

[13] App. to Opening Br. at A232.

6

Upshot. The same is true of Upshot's complaint that its litigation activity in the Court of Chancery was minimal in comparison to cases where litigants are found not to have waived arbitration. Here, Upshot chose to litigate alongside its affiliate, which did not have the arbitration option, and only raised its arbitration hand when it lost and found itself exposed to sanctions. The Court of Chancery wisely rejected this stratagem.

(15) Finally, our review of the record persuades us that allowing Upshot to invoke the contractual arbitration provision here after litigating and losing this summary advancement proceeding on the merits—in the Court of Chancery's words "the ultimate do-over"—would cause substantial prejudice to the petitioner.[14] For one thing, the expense and delay that would attend a dismissal of Upshot from the Court of Chancery's summary-judgment order and the advancement action would obviously harm Gandhi. More than that, she would lose, among other things, her hard-earned judgment that she is entitled to advancement and arguably put at risk the fees and expenses already advanced. Because the prejudice is palpable, it is unnecessary for us to determine whether there should be a prejudice component in

---

[14] *Gandhi-Kapoor*, 307 A.3d at 359.

our arbitration-waiver analysis in light of the United States Supreme Court's opinion in *Morgan v. Sundance, Inc.*;[15] either way, Upshot's prejudice argument fails.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[15] 596 U.S. 411, 419 (2022) (observing that Section 6 of the Federal Arbitration Act "instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA.").